UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD KUYKENDALL,       )<br>     Plaintiff,       )<br>                            )<br>vs.                         )<br>                            )<br>MICHAEL J. ASTRUE, Commissioner of the)<br>Social Security Administration,       )<br>     Defendant.       ) | 1:08-cv-0162-LJM-DML |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Ronald Kuykendall ("Kuykendall"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), which found that Kuykendall was not entitled to a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Court rules as follows.

## I. BACKGROUND

Kuykendall was born on October 8, 1941. R. at 257. Kuykendall worked from 1990 until 1995 as a Ford manufacturing planning specialist. R. at 96, 106, 551-52, 565. He filed for DIB on or about July 14, 2003, alleging an onset date of April 1, 1995. R. at 72. Kuykendall was denied benefits initially and then again upon reconsideration. On May 31, 2006, Kuykendall received a hearing before an ALJ.

Kuykendall sustained severe injuries in a 1967 motor vehicle accident. As a result, he was hospitalized for a year for multiple skull fractures; a fractured right femur with grafting and rod placement; fractured right patella with partial resection; fractures of the left

tibia and fibula with rod placement in the tibia; and dislocated right elbow requiring open reduction.  R. at 183, 230, 248.

In May 1996, Kuykendall complained to his VA physicians of left knee pain and stiffness that occurred when he stood on concrete floors.  R. at 263.  His knee problems progressed and resulted in the following severe impairments: post-traumatic osteoarthritis to bilateral knees, mild ankle and hip arthritis, remote C6-C7 fusion, and L5-S1 disc narrowing with back pain.  R. at 31.  The VA found Ron disabled and granted him unemployment benefits effective March 31, 2000.  R. at 263.  In August 2002, Kuykendall was diagnosed with rotator cuff tendinitis.  (R. at 355).  After first attempting conservative care, Kuykendall underwent arthroscopic rotator cuff repair of his right shoulder on May 1, 2003.  (R. at 301-302).

On July 14, 2003, Kuykendall applied for DIB benefits.  R. at 72-74.  Dr. Doug Peplin performed a physical examination of Kuykendall at the SSA's request and diagnosed Kuykendall with mild ankle arthritis; chronic low back pain, bilateral hip OA, right greater than left; and status post right rotator cuff repair.  R. at 129.

In his application, Ron reported that his last past relevant work was as a manufacturing planning specialist ("Planning Specialist") for Ford.  R. at 96-97.  Kuykendall reported that he retired early from Ford due to pain he experienced while working there.  R. at 113.  Kuykendall asserted that he worked eight hours a day as a Planning Specialist.  R. at 96, 107.  Kuykendall's two applications differed, however, in Kuykendall's description of how long he walked, stood, and sat on a daily basis: in one application Kuykendall wrote "walk 2, stand 1, sit 6"; but in the next application he wrote "walk 1, stand 1, sit 4."  R at 97, 107.  In both descriptions Kuykendall stated he lifted less than ten pounds.  R. at 97, 107.

Stephanie Archer, a vocational expert, stated that Kuykendall's work was sedentary and that her testimony was consistent with the Dictionary of Occupational Titles. R. at 570, 572. She did not specify whether Kuykendall's past relevant work required two hours of standing or walking, as is most common with sedentary work, or "up to one third of the time" standing or walking, which is also consistent with SSR96-9p's definition of sedentary work.

On January 22, 2007., the ALJ denied Kuykendall's claim. Relying on Kuykendall's description of his past work and the VE's testimony, the ALJ found that Kuykendall could perform his "work as a planning specialist . . . as it was actually and generally performed through the date last insured." R. at 39. On November 21, 2007, the Appeals Council denied review, prompting the present appeal. R. at 10-12.

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. A "disabled" individual is one who is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "disabled" individual's impairment must be of such severity that he is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines this work as work which exists in significant numbers either in the region where [a person] lives or in several regions

of the country." *Id.* In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. §405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g.*, *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only

4

evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The Court reviews ALJ decisions in social security disability cases deferentially, upholding it evidence is sufficient for a reasonable person to accept as adequate to support the decision.  42 U.S.C.A. § 405(g).

### III. DISCUSSION
### A.  THE ALJ'S FINDINGS

The ALJ first noted that Kuykendall met the insured status requirements of the Social Security Act on September 30, 2001.  R. at 31.  The ALJ further observed that Kuykendall satisfied the first step of the disability analysis, as he had not engaged in substantial gainful activity since his alleged onset date.  *Id.*  Next, the ALJ found Kuykendall had severe impairments, namely post-traumatic osteoarthritis to bilateral knees, mild ankle and hip arthritis, remote C6-C7 fusion, and L5-S1 disc narrowing with back pain.  *Id* (citing 20 CFR 404.1520(c)).

At step three, the ALJ found that Kuykendall did not have an impairment or combination of impairments that are medically equivalent to an impairment specified in the Listing of Impairments.  R. at 32.  In support of this finding, the ALJ cited Dr. Paul Boyce, Kuykendall's treating physician, who testified that the physical impairments did not meet or medically equal any of the listed impairments.  *Id.*  The ALJ concluded that this finding was further substantiated by the findings of State Agency physicians Drs. Dobson and Bastnagel.  Moreover, the ALJ noted the absence of any subsequent medical opinions to the contrary. *Id.*  The lack of any evidence that Kuykendall is unable to ambulate effectively,

coupled with evidence of rigorous activity undertaken by Kuykendall in 2002-2004, precluded the ALJ from finding in favor of Kuykendall at this step. *Id.*

Next, the ALJ found that Kuykendall had the residual functional capacity ("RFC") to lift or carry ten pounds frequently and lift or carry twenty pounds occasionally, stand or walk for at least two hours of an eight-hour workday, and sit for about six hours in an eight-hour workday. R. at 33. The ALJ also found that Kuykendall has the capacity to stand or walk for "at least" two hours a day; but, in so finding, the ALJ relied on Dr. Boyce's conclusion that Kuykendall is "limited to" two hours of walking or standing per day. In addition, the ALJ found that Kuykendall had no manipulative, visual, communicative, or environmental limitations through the date last insured. *Id.*

The ALJ relied on Kuykendall's description of his job as a Planning Specialist and on the VE's testimony in assessing Kuykendall's past relevant work. To determine how much walking/standing Kuykendall's past relevant work involved, the ALJ referred to Kuykendall's own descriptions: "walk 2, stand 1, sit 6"; and "walk 1, stand 1, sit 4." R. at 96-97, 107. The ALJ referred to Kuykendall's description of his job to find that Kuykendall had the RFC to perform his past relevant work as it was actually performed. Relying on the opinion of the VE, the ALJ concluded that Kuykendall was not disabled, as he had the RFC to work as a Planning Specialist. R. at 39.

### B.  KUYKENDALL'S ARGUMENTS ON APPEAL

Kuykendall does not challenge steps one through three of the ALJ's analysis. Kuykendall instead argues that the ALJ's step-four determination, finding that Kuykendall was capable of performing past relevant work, was "not supported by substantial evidence." Specifically, Kuykendall argues that the ALJ did not make findings regarding the physical and mental demands of his past relevant work as required by SSR 82-62. Further, Kuykendall argues that the ALJ's own finding regarding Kuykendall's RFC precludes a finding that Kuykendall can perform his past relevant work.

Under step-four, "if the claimant can still perform the claimant's past relevant work given the claimant's [RFC], the claimant is not disabled." 20 C.F.R. § 404.1520(a)(4). A claimant will be found to be "not disabled" if it is determined that: (1) the claimant has the RFC to perform "the actual functional demands and job duties of a particular past relevant job"; or (2) the claimant has the capacity to perform the "functional demands and job duties of the occupation as generally required by employers in the national economy." SSR 82-61; *Lauer v. Bowen*, 818 F.2d 636, 640 (7th Cir. 1987) (per curiam) (holding that Social Security Administration Rulings "are intended not solely to be enlightening but are binding on the Social Security Administration . . . and also capable of being relied upon as precedent until they are either expressly superseded, modified, or revoked by later legislation, court decisions or rulings"). SSR 82-62 is instructive regarding the inquiry the ALJ must undertake in determining Kuykendall's ability to perform past relevant work:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met . . . (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the

7

> *Dictionary of Occupational Titles, etc.,* on the requirements of the work as generally performed in the economy."

SSR 82-62. This decision has "far-reaching implications and must be developed and explained fully in the disability decision." *Id.* Further, "every effort must be made to secure evidence that resolves the issue as clearly as circumstances permit." *Id.*

The ALJ erred as a matter of law when he failed to develop the record regarding the physical and mental demands of Ron's past relevant work. The ALJ relied on the testimony of Kuykendall and the vocational expert ("VE") in his findings regarding the physical and mental demands of Kuykendall's past relevant work. In determining the amount of standing/walking Kuykendall's that past relevant work required, the ALJ referred to Kuykendall's own testimony. The ALJ also relied on the VE's testimony that Kuykendall's past relevant work was "sedentary" in concluding that Kuykendall was not disabled because he had the RFC to work as a Planning Specialist. R. at 39.

In making findings regarding the physical and mental demands of a claimant's past relevant work, the ALJ must assess details of the job's demands, including strength, endurance, manipulative ability, and mental requirements. SSR 82-62. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. *Id.* "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." *Id.* The ALJ has a duty to explore any vocational inconsistencies that are apparent at the time of hearing. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

The ALJ erred as a matter of law in not requesting a more specific description of the amount of standing/walking required by Kuykendall's past relevant work. The ALJ relied, without further inquiry, on Kuykendall's conflicting descriptions of the amount of walking/standing required daily in his Planning Specialist position: "'walk2, stand 2, sit 6'; and 'walk 1, stand 1, sit 4.'" R. at 96-97, 107. Kuykendall's testimony is ambiguous and does not comport with the VE's classification of the Planning Specialist position as sedentary. Kuykendall's descriptions are of a nine-hour or a six-hour workday, while sedentary work is generally determined based on an eight-hour workday. The lack of any request by the ALJ for clarification regarding Kuykendall's descriptions violates SSR 82-62, which "requires a careful appraisal of . . . the individual's statements as to which past work requirements can no longer be met", and "enough information on past work to permit a decision as to the individual's ability to return to such past work."

The ALJ also erred in failing to request more specific information before relying on the VE's testimony that the Planning Specialist position was consistent with sedentary exertional work as classified in the Dictionary of Occupational Titles and as the claimant performed it. R. at 39. The definition of sedentary is flexible, providing that sedentary work generally entails no more than about two hours of an eight-hour workday, but may occur "up to one third of the time. SSR 96-9P. The ALJ is required to explore apparent conflicts between the VE's evidence and the DOT. SSR 00-4p. The VE's testimony was not challenged, but an apparent and important ambiguity existed. It is undisputed that the VE testified that Kuykendall's past work as generally performed entails walking/standing "up to one third" of the work day. This may or may not exceed Kuykendall's residual functional capacity of two hours of walking or standing.

The Court concludes that the ALJ should have inquired as to whether the VE determined that the Planning Specialist position entailed two hours of standing/walking as generally assumed for sedentary work, or up to a third of the time. This distinction warrants further inquiry because if Kuykendall's past relevant work requires greater than two hours of standing in a workday, it would exceed his RFC of two hours standing/walking. R. at 33. If the VE contends that Kuykendall's sedentary past relevant work required standing/walking for a third of an eight-hour workday, or 2.67 hours, then Kuykendall's past relevant work would exceed his RFC, requiring a finding that Kuykendall is disabled. This same analysis applies to the ALJ's reliance on Vocational Expert Archer's testimony that Ron's past work as generally performed in the national economy was "sedentary" and that her testimony was consistent with the DOT.

In addition, the ALJ failed to develop the record regarding Kuykendall's RFC. This failure is evidenced by the ALJ's vague and inconsistent findings of fact. In the opening paragraph of the ALJ's assessment of Kuykendall's RFC, the ALJ states that Kuykendall had the RFC to "stand or walk . . . for a total of *at least* 2 hours for an 8-hour workday." R. at 33 (emphasis added). In support of this finding, the ALJ cites Dr. Boyce's testimony that Kuykendall's RFC permitted "standing and walking *limited to* 2 hours in an 8-hour day." R. at 35 (emphasis added). Whether Kuykendall's RFC permits standing and walking "limited to [two] hours" or for "at least two hours" is consequential because Kuykendall's past relevant work may require greater than two hours of standing or walking. The Court concludes that the ALJ should have eliminated inconsistencies regarding Kuykendall's RFC.

In summary, the Court concludes that the ALJ failed to develop the record regarding Kuykendall's past relevant work and RFC. Therefore, the ALJ's finding that Kuykendall could perform his past relevant work is not supported by substantial evidence.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this cause is **REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED this 18th day of November, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Jame S. Goldstein
jamegoldsteinlaw@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov